IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JIHAD MUHAMMAD-BEY,                      No. C 10-0667 TEH (PR)

        Petitioner,

    v.                                  ORDER DENYING PETITION FOR WRIT
                                         OF HABEAS CORPUS; DENYING
JOHN HAVILAND, Warden,                   CERTIFICATE OF APPEALABILITY

        Respondent.

_____/

      Petitioner Jihad Muhammad-Bey aka Charles Anderson, a
prisoner incarcerated at Solano State Prison in Vacaville,
California, has filed a <u>pro se</u> petition for a writ of habeas corpus
under 28 U.S.C. § 2254, which, for the reasons that follow, the
Court denies.

<div align="center">I</div>

      On April 11, 2006, a jury convicted Petitioner of four
counts of second degree robbery. Ex. 1, Clerk's Transcript (CT)
179-181, 184-87. The jury found the weapon-use allegation true, as
well as the allegation of infliction of great bodily injury. CT
184-87. On April 12, 2006, the trial court found Petitioner had
suffered eleven prior convictions. Ex. 2, Vol. 7 Reporter's
Transcript (RT) 12. On July 31, 2006, the trial court imposed an
indeterminate sentence of seventy-five years to life on the robbery
convictions and a determinate term of twenty-five years on the

<div style="writing-mode: vertical-rl; text-align: center;"><strong>United States District Court</strong><br/>For the Northern District of California</div>

United States District Court
For the Northern District of California

sentence enhancements.  CT 230-31; 7 RT 11-17.  On August 27, 2007, the California Court of Appeal affirmed the judgment.  Ex. 6.  On November 14, 2007, the California Supreme Court denied review.  Ex. 7, 8.  On February 2, 2009, Petitioner filed a petition for a writ of habeas corpus in the San Francisco superior court.  Ex. 9.  On July 14, 2009, the superior court issued a two-page denial.  Ex. 9.  Petitioner filed timely petitions for a writ of habeas corpus in the California Court of Appeal and the California Supreme Court.  Exs. 10, 12.  Each court issued a one-sentence denial.  Exs. 11, 13.

On February 17, 2010, Petitioner a filed a timely petition for a writ of habeas corpus in this Court.  On July 1, 2010, the Court issued on Order to Show Cause, finding that Petitioner had stated claims of ineffective assistance of trial and appellate counsel based on failure to investigate and present evidence of his mental impairment and failure to challenge the constitutionality of his prior convictions used to enhance his sentence.  Respondent has answered and Petitioner has filed a traverse.[1]

---

[1]  In his traverse, Petitioner attempts to assert an Equal Protection claim based on discrimination due to his Moorish-American heritage and a Fourth Amendment claim based on a warrantless search of his living quarters in a homeless shelter.  Because these claims were raised for the first time in his traverse, Respondent does not address them.  "A traverse is not the proper pleading to raise additional claims for relief" on federal habeas review.  Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994).  In order for the state to be properly notified of additional claims, they should be presented in an amended petition, to which the state can file an answer.  Id.  Therefore, to the extent that Petitioner raises additional claims in his traverse, the Court denies relief.

United States District Court

For the Northern District of California

II

The statement of facts is taken from the briefs Petitioner and Respondent submitted on direct appeal to the California Appellate Court, exs. 3 and 4, and the trial transcript.  On March 3, 2005, at approximately 4:00 p.m., San Francisco police officer Mark Gamble, working in an off-duty position as a security guard at the Embarcadero Center in San Francisco, saw Petitioner leaning on a cement wall in the vicinity of ramps leading to and from the parking garage in Embarcadero Number 3.  3 RT 74.  Because Petitioner was alone and appeared nervous and agitated, Officer Gamble decided to further observe him.  3 RT 75.  Officer Gamble circled around to Petitioner's location, but when he arrived, Petitioner was gone.  3 RT 76.  Officer Gamble walked around searching for Petitioner and observed him again near Clay Street, emerging from behind a pillar on the ramp of the garage.  3 RT 76.  Petitioner was wearing a black ski cap, a red, black and grey nylon jacket, black pants and white shoes.  3 RT 83.  When Officer Gamble made eye contact with Petitioner, Petitioner immediately walked up to Officer Gamble.  3 RT 77.  This startled Officer Gamble because Petitioner was nervous and animated, and kept putting his hands in and out of his pocket.  3 RT 77.  Officer Gamble asked Petitioner to stay a few feet away from him and Petitioner complied.  3 RT 77.  Petitioner told Officer Gamble that he had been robbed the night before and someone had hit him with a knife.  3 RT 78.  Petitioner also told Officer Gamble that he was waiting for someone, but Officer Gamble did not see anyone in the vicinity during his encounter with Petitioner.  3 RT 79.

3

United States District Court
For the Northern District of California

1    Officer Gamble contacted Officer Kevin Richins, also an

2    officer with the San Francisco Police Department working off-duty as

3    security for the Embarcadero complex.  Petitioner identified himself

4    to the officers as Charles Anderson and that he was residing at a

5    homeless shelter on Turk and Leavenworth Streets in San Francisco.

6    3 RT 82.  Officer Richins did a pat-down search of Petitioner and

7    removed from his jacket pocket a large concrete rock with jagged

8    edges, approximately four inches by six inches.  3 RT 84.

9    Petitioner was not detained further.

10    On March 5, 2005, at approximately 8:00 p.m., Ai Jing

11    Huang was working as a parking attendant at a parking garage at 622

12    Washington Street in San Francisco. 3 RT 95.  Huang was alone and

13    noticed Petitioner walking down the ramp of the parking garage.  3

14    RT 96, 98.  Petitioner was wearing a black cap, a black and red silk

15    jacket and black jeans.  3 RT 99-100.  When Petitioner was

16    approximately three feet away from Huang, he pulled out a metal rod,

17    about ten inches in length.  3 RT 101.  When Huang tried to stand

18    up, Petitioner hit him twice with the metal rod.  3 RT 102.

19    Petitioner said, "give me money," and Huang pulled out approximately

20    $200 from his pocket and gave it to Petitioner.  3 RT 102.  When

21    Petitioner asked Huang for more money, Huang said it was all he had,

22    and Petitioner hit him on the right forearm and on his left ribs

23    with the metal rod.  3 RT 103.  Huang got up and hit Petitioner with

24    his chair.  3 RT 103.  Petitioner said, "I am going to kill you, I

25    am going to kill you."  3 RT 104.  Huang called out to someone for

26    help, and Petitioner ran away.  3 RT 106.  Huang called 911 and

27    Officer David On of the San Francisco Police Department responded.

28    Huang gave him a description of Petitioner.  Huang later identified

4

Petitioner from a photo line-up.  3 RT 117.  He later identified
Petitioner at the preliminary hearing and at the trial.  3 RT 98,
108.

On March 6, 2005, at approximately 7:30 p.m., Senait Gebre
and Sendeku Kassie were working behind the counter at Zane's Liquor
Store at 246 Second Street in San Francisco when Petitioner entered
the store wearing a black and red jacket, black pants and black
shoes.  4 RT 163-66.  Petitioner first went to the cooler and
retrieved a bottle of water.  When he went to the counter, he
grabbed Kassie's cordless phone and put it in his pocket, grabbed
Kassie, dragged him from behind the counter and beat him on the head
with a piece of metal four or five times, causing Kassie to fall to
the ground.  4 RT 168-71.  Petitioner said, "give me the money, give
me the money."  4 RT 172.  Gebre opened the cash register and threw
the money at Petitioner.  4 RT 172.  Gebre believed Petitioner took
between $600 and $1,000.  They called the police and Gebre provided
them with a description of Petitioner.  4 RT 174.  Gebre later
identified Petitioner from a photo line-up, but she wrote that she
was not "100% sure" of her identification.  4 RT 186.  She also
identified Petitioner at the preliminary hearing and the trial as
the person who robbed her, but she stated that she was only 50% sure
of her identification.  4 RT 182.  Kassie was unable to identify the
person that robbed him from a photo line-up or at the preliminary
hearing.  5 RT 13-14.

On March 9, 2005, at approximately 4:00 p.m., Jose Rimon
was working at the parking garage at 600 Harrison Street in San
Francisco as a valet and cashier.  5 RT 29.  Rimon was working alone
in a booth located at the bottom of the ramp that led in and out of

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

the garage. 5 RT 30. Petitioner walked down the ramp to Rimon and said "give me the money." 5 RT 31. Rimon walked out of the booth and Petitioner removed a steel pipe, about two feet long, from behind his back. 5 RT 32-33. Petitioner then whacked Rimon on the head and his body with the pipe. 5 RT 33. A woman leaving the garage in her car shouted to Rimon to jump in her car, which he did. 5 RT 35. As they were driving away, Rimon looked back and saw Petitioner in the booth getting money from the drawer. 5 RT 35-37. Rimon remembered that Petitioner wore a black cap and a white tee-shirt. 5 RT 36. Rimon identified Petitioner at the preliminary hearing and at the trial. 5 RT 38.

Eduardo Romero, maintenance foreman of the 600 Harrison Street garage, was approaching his office, which was close to Rimon's booth, when he heard sounds and saw Rimon bleeding from the head. 6 RT 315-17. Rimon told him that he was being robbed and Romero saw Petitioner taking money from the booth. 6 RT 317. Romero identified the robber as wearing a black beanie, a white shirt and black pants and he had a small goatee. 6 RT 319-20. Romero identified Petitioner in a photo line-up, 6 RT 339, and at the trial, 6 RT 321.

On March 11, 2005, Officer Shaughn Ryan of the San Francisco police department and other officers executed an arrest warrant for Petitioner at a shelter at 290 Turk Street in San Francisco. 3 RT 68. They found Petitioner at the Turk Street address and arrested him. 3 RT 68-69.

### III

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, a federal court may

6

not grant a writ of habeas corpus on any claim adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must be objectively unreasonable."  Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citation omitted).  Moreover, in conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

United States District Court
For the Northern District of California

The standard of review under AEDPA is somewhat different where the state court gives no reasoned explanation of its decision on a petitioner's federal claim.  In such a case, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable.  <u>Plascencia v. Alameida</u>, 467 F.3d 1190, 1197-98 (9th Cir. 2006);  <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003).  When confronted with such a decision, a federal court should conduct an "independent review of the record" to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law. <u>Plascencia</u>, 467 F.3d at 1198; <u>Himes</u>, 336 F.3d at 853.

Here, the only reasoned decision was issued by the California appellate court on direct appeal, which addressed the only claim Petitioner raised, whether his encounter with Officers Gamble and Richins constituted an improper search or seizure.  The state habeas courts, which were presented with the ineffective assistance of counsel claims that Petitioner raises here, did not issue a reasoned decision on them.  Therefore, this Court conducts an independent review of the record to determine whether the state courts' rejection of Petitioner's claims was an objectively unreasonable application of clearly established federal law.

IV

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial

United States District Court

For the Northern District of California

1  process that the trial cannot be relied upon as having produced a

2  just result.  Id.

3          In order to prevail on an ineffectiveness of counsel

4  claim, a petitioner must establish two things.  First, the

5  petitioner must establish that counsel's performance was deficient,

6  i.e., that it fell below an "objective standard of reasonableness"

7  under prevailing professional norms.  Id. at 687-88.  Second, the

8  petitioner must establish that he or she was prejudiced by counsel's

9  deficient performance.  Id. at 694.

10         To show that trial counsel's performance was deficient, a

11 petitioner must show that counsel made errors so serious that

12 counsel was not functioning as the "counsel" guaranteed by the Sixth

13 Amendment.  Id. at 687.  The relevant inquiry is not what defense

14 counsel could have done, but rather whether the choices made by

15 defense counsel were reasonable.  Babbitt v. Calderon, 151 F.3d

16 1170, 1173 (9th Cir. 1998).  Judicial scrutiny of counsel's

17 performance must be highly deferential, and a court must indulge a

18 strong presumption that counsel's conduct falls within the wide

19 range of reasonable professional assistance.  Strickland, 466 U.S.

20 at 689.

21         To establish prejudice, the petitioner must show that

22 counsel's errors were so serious as to deprive the petitioner of a

23 fair trial, a trial whose result is reliable.  Strickland, 466 U.S.

24 at 688.  The test for prejudice is not outcome-determinative, i.e.,

25 the petitioner need not show that the deficient conduct more likely

26 than not altered the outcome of the case; however, a simple showing

27 that the defense was impaired is also not sufficient.  Id. at 693.

28 The petitioner must show that there is a reasonable probability

United States District Court
For the Northern District of California

1  that, but for counsel's unprofessional errors, the result of the

2  proceeding would have been different; a reasonable probability is a

3  probability sufficient to undermine confidence in the

4  outcome.  <u>Id.</u> at 694.

5       The Due Process Clause of the Fourteenth Amendment

6  guarantees a criminal defendant the effective assistance of counsel

7  on his first appeal as of right.  <u>Evitts v. Lucey</u>, 469 U.S. 387,

8  391-405 (1985).  Claims of ineffective assistance of appellate

9  counsel are reviewed according to the standard set out in

10 <u>Strickland</u>.  <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000); <u>Moormann v.</u>

11 <u>Ryan</u>, 628 F.3d 1102, 1106 (9th Cir. 2010).  First, the petitioner

12 must show that counsel's performance was objectively unreasonable,

13 which in the appellate context requires the petitioner to

14 demonstrate that counsel acted unreasonably in failing to discover

15 and brief a merit-worthy issue.  <u>Smith</u>, 528 U.S. at 285; <u>Moormann</u>,

16 628 F.3d at 1106.  Second, the petitioner must show prejudice, which

17 in this context means that the petitioner must demonstrate a

18 reasonable probability that, but for appellate counsel's failure to

19 raise the issue, the petitioner would have prevailed in his appeal.

20 <u>Smith</u>, 528 U.S. at 285-86; <u>Moormann</u>, 628 F.3d at 1106.  It is

21 important to note that appellate counsel does not have a

22 constitutional duty to raise every nonfrivolous issue requested by

23 defendant.  <u>Jones v. Barnes</u>, 463 U.S. 745, 751-54 (1983); <u>Gerlaugh</u>

24 <u>v. Stewart</u>, 129 F.3d 1027, 1045 (9th Cir. 1997).

25       V. Investigation and Presentation of Mental Health Defense

26            A. Trial Counsel

27       Petitioner claims that counsel was ineffective for failing

28 to mount a credible diminished capacity defense due to the effects

**United States District Court**
For the Northern District of California

1   of various psychotropic medications he was taking at the time the

2   crimes were committed.  In support of this claim, Petitioner submits

3   a form for release of medical information to the office of the

4   public defender, that he signed on April 4, 2004.  He also submits

5   an unsigned, undated, partially completed form from the public

6   defender's office which lists various medications and a diagnosis,

7   but the lines for the client's name, address and other identifying

8   information are blank.  Respondent argues that this claim must be

9   denied because Petitioner has failed to show the viability of a

10  diminished capacity defense.

11          A defense attorney has a general duty to make reasonable

12  investigations or to make a reasonable decision that makes

13  particular investigations unnecessary.  <u>Strickland</u>, 466 U.S. at 691;

14  <u>Cullen v. Pinholster</u>, 131 S. Ct. 1388, 1407 (2011).  However,

15  counsel is not required to pursue every claim or defense, regardless

16  of its merit, viability, or realistic chance for success.  <u>Knowles</u>

17  <u>v. Mirzayance</u>, 556 U.S. 111, 124 (2009).

18          Diminished capacity, which was once a viable defense in

19  California, was abolished in 1982.

20      California Penal Code § 25, provides, in relevant part:

21      (a) the defense of diminished capacity is hereby
        abolished.  In a criminal action . . . evidence concerning
22      an accused person's intoxication, trauma, mental illness,
        disease, or defect shall not be admissible to show or
23      negate capacity to form the particular purpose, intent,
        motive, malice aforethought, knowledge, or other mental
24      state required for the commission of the crime charged.

25      . . .

26      (c) Notwithstanding the foregoing, evidence of diminished
        capacity or of a mental disorder may be considered by the
27      court only at the time of sentencing or other disposition
        or commitment.

28

11

United States District Court
For the Northern District of California

Therefore, at the time of Petitioner's trial in 2006, counsel could not have presented a defense that Petitioner was not guilty due to diminished capacity from mental illness or disease. Counsel's performance cannot be found to be deficient because he failed to put on an unavailable defense.  See Mirzayance, 556 U.S. at 124.

At Petitioner's sentencing hearing, he informed the trial court that he took psychotropic medication, and that he was seeing a therapist and a psychiatrist.  7 RT 8.  Also, at the hearing, Petitioner told the court that he did not fault his counsel for not obtaining his medical records because "they just weren't available at the time."  7 RT 9.  Counsel confirmed that he went to the shelter where Petitioner lived to obtain his medical records, but he was told that the records were destroyed after one year.  7 RT 10. Counsel told the court that he was bringing Petitioner's mental health issue to the court's attention "as just circumstance that might cause the Court to show some leniency."  7 RT 10.  The court responded, "And I have to say in looking at the record, it's a pretty significant record, and there are acts of violence, considerable acts of violence.  Based on that, I don't think I can exercise my discretion to strike those priors, I cannot."  7 RT 11.

This dialogue illustrates two significant points.  First, contrary to Petitioner's claim, counsel did investigate and try to obtain his mental health records.  Petitioner acknowledged this at his sentencing hearing.  Therefore, Petitioner's claim that counsel did not investigate is not supported by the record.

Second, trial counsel introduced evidence of Petitioner's mental health at Petitioner's sentencing hearing, as was proper

12

under California Penal Code § 25(c).  In sentencing Petitioner, the court considered his mental health issues, but based upon Petitioner's significant record of past convictions and his violent conduct, the court did not strike any of Petitioner's prior convictions, which would have reduced his final sentence. Therefore, Petitioner's claim that counsel did not present mental health evidence to the court is not supported by the record. Because counsel's performance was not deficient, the Court need not address <u>Strickland</u>'s second prong regarding prejudice.

### B. Appellate Counsel

Petitioner argues that appellate counsel was ineffective, presumably for not raising this ineffective assistance of counsel claim in his direct appeal.

Because trial counsel was not deficient in either investigating Petitioner's mental health or in presenting evidence about it, a claim of ineffective assistance of trial counsel based this issue on appeal would likely not have succeeded.  <u>See</u> <u>Jones</u>, 463 U.S. at 751-54 (appellate counsel does not have a constitutional duty to raise every nonfrivolous issue).  Instead, appellate counsel focused on the trial court's denial of the motion to suppress the evidence obtained during Petitioner's encounter with Officers Gamble and Richins.  Exs. 3, 5.  During that encounter, Petitioner made statements about being robbed and being hit with a metal pipe.  2 RT 9.  These statements were incriminating because Petitioner was describing his own modus operandi in committing the charged robberies.  Also, during this encounter, the officers obtained Petitioner's name and address, which later facilitated his arrest. Given these incriminating statements, appellate counsel's decision

**United States District Court**
For the Northern District of California

to appeal from the trial court's denial of the motion to suppress was tactically sound.

Therefore, based upon an independent review of the record, the Court finds that the state court's denial of the claim of ineffective assistance of trial and appellate counsel based on Petitioner's mental health was not an objectively unreasonable application of clearly established federal law.

## VI. Ineffective Assistance of Trial and Appellate Counsel Regarding Sentencing

Petitioner contends his trial counsel was ineffective because he failed to conduct an adequate investigation into the constitutionality of Petitioner's 1989 prior convictions, which were used to enhance his sentence. Petitioner argues that these prior convictions were unconstitutionally obtained because trial counsel in the 1989 case was also ineffective.

A petitioner generally may not attack the constitutionality of a prior conviction used to enhance a later sentence. "[O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained." Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 403-04 (2001) (citations omitted). On May 2, 1989, Petitioner received a fifteen year sentence for the 1989 convictions. CT at 139-I & J. Given

14

United States District Court

For the Northern District of California

1  this, Petitioner was not in custody at the time he was sentenced in

2  2006, and the 1989 convictions are no longer open to collateral

3  challenge in federal court.

4      The rule in California is the same.  The California Supreme

5  Court has held, "In a current prosecution for a noncapital offense,

6  the interest of judicial efficiency does not justify a rule of

7  criminal procedure requiring that trial courts entertain motions to

8  strike based upon the constitutional ground of ineffective

9  assistance of counsel."  Garcia v. Superior Court, 14 Cal. 4th 953,

10  966 (1997).  Therefore, at the time Petitioner was sentenced,

11  counsel could not have raised a challenge to the his 1989

12  convictions based on ineffective assistance of counsel in that case.

13      Counsel's performance cannot be found to be deficient because

14  he failed to make an unmeritorious argument at Petitioner's

15  sentencing.

16          For the reasons discussed above, appellate counsel was

17  under no obligation to raise a spurious claim of ineffective

18  assistance of counsel based on the unconstitutionality of

19  Petitioner's 1989 convictions.  See Jones, 463 U.S. at 751-52

20  (winnowing out weak or frivolous issues is the duty of appellate

21  counsel).  Therefore, appellate counsel was not deficient for

22  failing to include in Petitioner's appeal a claim of ineffective

23  assistance of trial counsel founded on counsel's performance at

24  Petitioner's sentencing.

25          Based upon an independent review of the record, the Court

26  finds that the state court's denial of the claim of ineffective

27  assistance of trial and appellate counsel regarding Petitioner's

28

sentencing was not an objectively unreasonable application of clearly established federal law.

                                    VII

        For the foregoing reasons, the Petition for a Writ of Habeas Corpus is DENIED.

        Further, a Certificate of Appealability is DENIED.  <u>See</u> Rule 11(a) of the Rules Governing Section 2254 Cases.  Petitioner has not made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure.  <u>See</u> Rule 11(a) of the Rules Governing Section 2254 Cases.

        The Clerk is directed to enter Judgment in favor of Respondent and against Petitioner, terminate any pending motions as moot and close the file.

        IT IS SO ORDERED.


DATED    _08/02/2012_                    _____
                                         THELTON E. HENDERSON
                                         United States District Judge


G:\PRO-SE\TEH\HC.10\Bey-10-0667-HC Deny.wpd

16